**E.C. ERNST, INC., Plaintiff,**

v.

**COUNTY OF CONTRA COSTA, Defendant.**

**No. C–82–0410–WWS.**

United States District Court, N.D. California.

Dec. 23, 1982.

allegedly due on its contract and $1.6 million as damages for alleged delays and cost overruns. County has moved for summary judgment on the ground that Cal.Bus. and Prof.Code Section 7031 bars the action. That section provides:

> No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, . . . .

It is not disputed that Ernst was not a duly licensed contractor *at all times* during the performance of the contract; its license expired approximately half-way through the contract performance and was never renewed.

### Count I of the Complaint

In Count I, Ernst seeks damages caused by delay in its work and the necessity to perform it out of sequence and in a manner not contemplated by the contract resulting in substantial additional costs for labor, materials and overhead. It alleges that these costs were caused by various failures of the County to perform as required by the contract.

Neil A. Goteiner, Farella, Braun & Martel, San Francisco, Cal., Friedman & Gass, P.C., New York City, for plaintiff.

Larry D. Dingus, Linda Foust, Dingus, Haley & Holderness, San Francisco, Cal., John B. Clausen, County Counsel, Silvano B. Marchesi, Deputy County Counsel, Martinez, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This action arises out of the construction of defendant Contra Costa County's detention facility on which plaintiff E.C. Ernst was the electrical contractor. Ernst has filed this action to recover some $88,000

The question presented is whether the claim under Count I is one "for the collection of compensation for the performance of . . . [the] contract" within the meaning of Section 7031. The same issue was before Judge Karlton of the Eastern District in *American Sheet Metal v. Em-Kay Engineering,* 478 F.Supp. 809 (E.D.Cal.1979), in which an unlicensed contractor counterclaimed against its subcontractor for damages caused by the subcontractor's alleged failure to perform properly under its contract. After reviewing the statute and the cases, the court, in a thoughtful and well-reasoned opinion, concluded that Section 7031 did not apply to such an action for damages. The court followed *Davis Co. v. Superior Court,* 1 Cal.App.3d 156, 81 Cal.

Rptr. 453 (4th Dist.1969) (Hearing Denied), which permitted an action by an unlicensed contractor against its supplier. The only decision to the contrary, *General Ins. Co. of Amer. v. St. Paul Fire & Marine Ins. Co.,* 38 Cal.App.3d 760, 113 Cal.Rptr. 613 (2nd Dist. 1974), would limit *Davis* to actions not involving construction contracts. However, the same court in *Gaines v. Eastern Pacific,* 136 Cal.App.3d 679, 186 Cal.Rptr. 421 (2nd Dist.1982) only recently followed the *American Sheet Metal* decision, holding that Section 7031 did not bar a cross-claim by a sometime unlicensed contractor against its subcontractor for extra costs incurred as a result of the subcontractor's failure to perform properly. As an alternative ground for affirming a judgment for the contractor, the court, relying on *American Sheet Metal,* said that "The purpose of the statute is to protect the public, not to provide a shield against the satisfaction of obligations." 186 Cal.Rptr. at 424.

■ Analysis of these decisions persuades the Court that if this question came before the California Supreme Court, it would not hold Section 7031 to be a bar. A claim for damages caused by non-performance, such as Ernst's claim, does not implicate the policy of the statute to protect the public, i.e., the consumer, from contractors who do not satisfy California licensing requirements. Interpreting the narrowly drawn language of Section 7031 in light of its apparent purpose, there is no basis for precluding an action between contractors for damages caused to one by the other's non-performance.

The County would distinguish the cited cases on the ground that they involved actions by general contractors against subcontractors, analogizing the contractor to the owner as the intended recipient of services. The attempted analogy is faulty because the general contractor, not being the "consumer," is not in the position of the owner, i.e., the services are not rendered for its benefit. Moreover, the distinction appears to be one without a difference in light of the language of the statute. If, as County argues, an action for damages falls within the compensation language of the statute,

then an action by a contractor for damages caused by having to do work necessitated by the subcontractor's default is as surely covered as the reverse situation.

*Count II of the Complaint*

■ In Count II, Ernst seeks to recover approximately $88,000 as the balance due under its contract for work and materials. Section 7031 bars the claim unless it comes within the exception articulated by the California Supreme Court in *Latipac, Inc. v. Superior Court,* 64 Cal.2d 278, 49 Cal.Rptr. 676 (1966). *Latipac* permits an action to be maintained where there has been substantial compliance with the licensing requirement. In *Latipac,* the finding of substantial compliance rested on three factors:

1. That a valid license was held when the contract was signed;

2. That the contractor readily secured renewal when applied for;

3. That the responsibility and competence of the contractor's managing officer were officially confirmed throughout the period of performance.

In this case the record establishes the presence of the first factor and the absence of the second. The factual record on the third factor reflects substantial disputes with respect to responsibility for alleged non-performance by various parties which would in any event preclude summary judgment.

In view of this conclusion, it is not necessary to reach the issue whether a failure to establish all three of the *Latipac* factors precludes a finding of substantial performance with the licensing requirement. *Latipac* suggests that the courts take a flexible approach on the issue. On the other hand, where plaintiff cannot establish all three *Latipac* factors, the burden of proving substantial compliance with the licensing requirement will obviously be heavy.

For the reasons stated, the motion for summary judgment must be denied. After reviewing the material submitted by the parties, and in light of the fact that only the relatively minor Count II is involved, the Court concludes that a separate trial on this issue is unwarranted.

The action has now been pending for nearly a year in which the parties have had ample opportunity to conduct substantial discovery and arrive at their positions on claims and defenses. The time has come for plaintiff to submit a detailed statement of each item of cost claimed under Count I together with an explanation of how the County's acts or omissions caused it and a brief summary of the anticipated supporting evidence. Such a statement shall be served and filed by January 28, 1983.

The parties are further directed to confer prior to the next status conference with respect to the following matters and any others that may be appropriate:

1. Can the claim under Count II be settled or resolved in some fashion without a trial.

2. Preparation of a schedule for all remaining discovery.

3. Proposed dates for pretrial and trial.

4. Methods for facilitating the trial such as fact stipulations, prior disposition of issues, limiting exhibits, etc.

5. Procedures for trial (jury trial?, order of presentation, etc.).

6. Prospects for settlement.

The action is set for a status conference on February 11, 1983, at 10 a.m.

IT IS SO ORDERED.